UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

RONALD GRASON,

      PLAINTIFF

    v.

CENTER FOR MEDICARE
& MEDICAID SERVICES (CMS)

NATIONAL GOVERNMENT
   SERVICES, INC.

SECRETARY OF CMS
ILLINOIS DEPARTMENT OF FINANCIAL
& PROFESSIONAL REGULATION (IDFPR)

CASE NO. 14-2267

## COMPLAINT

NOW COMES THE PLAINTIFF RONALD GRASON, ALSO PETITIONER, AND SEEKS JUDICIAL REVIEW OF AN ADVERSE ADMINISTRATIVE DECISION BY THE DEPARTMENTAL APPEALS BOARD (DAB) ON SEPTEMBER 15, 2014 UPHOLDING THE REVOKATION OF HIS MEDICARE BILLING PRIVILEGES FOR THREE YEARS, THEREBY CHALLENGING the FINDINGS AND CONCLUSIONS OF LAW BY THE DAB

   PETITIONER ALSO SEEKS TO REVIEW OTHER ISSUES PRESENTED TO THE BOARD BUT NOT DECIDED OR GIVEN CREDENCE, INCLUDING, INTER ALIA, ALLEGED INDEBTEDNESS OF $750,000.

THIS REVIEW IS ALLOWED by 42 CFR 1878(f)(1) AGAINST THE SECRETARY WITHIN SIXTY DAYS OF DAB'S FINAL DECISION, INCLUDING ALL MATTERS OF LAW NOT DECIDED by DAB.

(1)

to THIS END, PLAINTIFF GRASON ALLEGES AS FOLLOWS:

1) ON OCTOBER 10, 2012 ALL CLAIMS WERE SUSPENDED THAT WERE ASSIGNABLE UNDER 42 CFR 400.202, TO AWAIT FURTHER DOCUMENTATION THE AGENCY, WISCONSIN PHYSICIAN SERVICES, DID RECEIVE ALL OTHER MEDICAL INFORMATION PERTAINING TO THE BENEFICIARIES INCLUDING MULTIPLE CHRONIC EXACCERBATING CONDITIONS AND ALL MEDICATIONS AVERAGE 10 PER PATIENT, however WPS DENIED ALL CLAIMS FOR MEDICAL SERVICES RENDERED STARTING FROM OCTOBER 10, 2012 to APRIL 2013., ALLEGING THAT THE MEDICAL SERVICES RENDERED WERE UNNECESSARY.

2) PRIOR THERETO IN 2011 PLAINTIFF'S MEDICAL RECORDS WERE AUDITED BY WPS AND THERE HAD BEEN NO ACTION TAKEN. NOR ADDITIONAL DOCUMENTATION REQUESTED.

3) A CORRECTIVE ACTION PLAN WAS SUBMITTED TO PLAINTIFF WHO ADDRESSED THE ISSUES. THIS WAS DENIED BY WPS; SUBSEQUENTLY his MEDICARE BILLING PRIVILEGES WERE REVOKED ON MAY 8, 2013 to be effective ONE MONTH LATER. THE REASON GIVEN WAS HUMAN & HEALTH SERVICES (HHS) HAD THE "LOGS." (TO BE EXPLAINED)

4) THE basis OF THE REVOKATION OF billing PRIVILEGES WAS FOUNDED UNDER 42 CFR 424.535(a)( ESSENTIALLY THIS SECTION IS FOR ABUSE OF billing PRIVILEGES. CMS ALLEGED THAT the SERVICES for five PATIENTS AT A SENIOR HIGH-RISE APARTMENT COMPLEX WERE IN FACT NOT RENDERED ON TWO ISOLATED OCCASIONS, namely DECEMBER 23, 2011 AND FEBRUARY 14, 2012. THE DECISION WAS BASED SOLELY ON THE VISITOR LOGS ON THOSE DATES, NEITHER OF which PLAINTIFF GRASON HAS ANY CONTROL. It should BE NOTED that THE VISITOR LOG is NOT Signed by any potential, AVAILABLE witness AND THAT THE OFFICE OF INSPECTOR GENERAL (OIG) through the HHS NEVER OBSERVED the Activities OF THE PROVIDER GRASON ON THOSE DATES AND COULD NOT produce ANY viable witness. INDEED the MEDICAL RECORDS OF PLAINTIFF did CONFIRM that he PROVIDED THE SERVICES ON those dates but NOT CONSIDERED IN EVIDENCE to CONTRADICT THE ALLEGATIONS OF CMS. INDEED the PLAINTIFF ATTENDS to THOSE FIVE PATIENTS TWICE WEEKLY FOR YEARS! It is highly contestable AND DUBIOUS that CMS WOULD PICK OUT TWO ISOLATED FAR APART dates to

(3)

demonstrate a pattern of abuse.

5) At all times in the step-wise appeals process plaintiff demanded a hearing and an opportunity to be heard present witnesses, and also confront any prosecutorial witnesses. The Department's Appeals Board, including the Administrative Law Judge, has never acceded to his demands and in effect rendered a summary judgment based on highly controversial evidence.

6) Although CMS contends that it is not governed by the Federal Rules of Evidence (FRE) and can admit relevant hearsay albeit reliable evidence the Administrative Law Judge is obligated to apply F.R.E. to exclude unreliable evidence, especially when there is strong objection by the opposing party. 42 CFR 93.519. At each and every occasion plaintiff has demanded the exclusion of the hearsay evidence.

7) IN All the ALLEGATIONS CMS WOULD be proven wrong for REVOKATION OF THE billing PRIVELEGES BASED ON NON-EXISTENT SERVICES to BENEFICITARIES. NOT ONE SOUL of All my PATIENTS has ever complained THAT I Short-changed them NOR FAILED to give them the time they REQUESTED to RESOLVE both their physical and mental health issues. Indeed the INVESTIGATOR FAILED to INTERVIEW any OF THOSE PATIENTS AT THE SULLIVAN APARTMENTS ALLUDED EARLIER. Perhaps CMS should Have INVOKED 42 USC 1320 a-7(11) IN THAT the provider SHOULD HAVE billed at a procedural code to RECEIVE less PAYMENT.

8) SINCE CMS has NOW concluded THAT plaintiff DID NOT RENDER SERVICES ON TWO OCCASIONS FOR FIVE PATIENTS ALL MY SERVICES FROM 2009-2011 ARE NEGATED AND DEMAND AN indebtedness OF $750,000.

(5)

9) Due to the unlawful indebtedness CMS HAS INSTRUCTED THE DEPT OF THE US TREASURY to GARNISH $297.15/mo. from the plaintiff's only source of INCOME, his social security. As a RESULT HIS complementary MEDICARE AND DENTAL insurances have lapsed FOR Non-payment due to the hardship AND HIS over-all health ISSUES have been imperiled due to his inability to PAY the 20% REQUIRED FOR PART B MEDICAL SERVICES.

10) Furthermore, the defendant IDFPR is ATTEMPTING TO REVOKE the MEDICAL license OF the PLAINTIFF GRASON based upon DAB's DECISION CASE NO. 2013-10486. Petitioner GRASON has contested the JURISDICTION OF IDFPR SINCE the decision OF THE DAB IS SUBJECT TO JUDICIAL REVIEW UNDER 42 1869. The PLAINTIFF MAY SEEK REVIEW IN the DISTRICT COURT OF ANY JURISDICTION where he is LOCATED. to HAVE JURISDICTION UNDER 225 ILCS 60/22 A(34) THE ACTION OF the government must be FINAL. THIS MATTER IS FAR FROM FINAL.

(6)

## FACTS OF CASE

On or About October 12, 2012 Wisconsin physicians Services, a contracted agent of CMS, began Denying ALL claims submitted by plaintiff for payment of services rendered. Petitioner clarified the nature of Multiple chronic serious conditions for ALL the concerned patients to a very short-sighted beaurocracy that continued to deny ALL claims to the present, alleging his home visits were not medically necessary.

In May, 2012 plaintiff responded to a corrective action plan demanded by WPS but to no avail. On may 8. 2012 his medicare billing privileges were revoked under 42CFR Sect. 424.535(a)(8) effective June 8, 2012, for the sole reason that he failed to provide the services billed for under CPT 99349.

Prior thereto All his patients signed affidavits complaining that WPS was interfering with the doctor-patient services; that the petitioner's services were necessary and reasonably necessary for their health welfare.

WPS claimed the visitor log demonstrated plaintiff was in the Sullivan Apartments at 1633 W. Madison St. Chicago Illinois for only several minutes on two separate dates, December 23, 2011 and February 14, 2012. Yet the medical records subpoened by the Department of Justice demonstrates that this was impossible and inaccurate. Petitioner visits the building twice weekly to care for his patients. these five patients are very satisfied with his services and no time limit is given for each consult. Petitioner conducts a comprehensive review and exam on all the patients each visit.

The investigator for the Health and Human Services failed to interview any of those patients nor was he privy to any observations or investigation except for conversations he conducted with the 'staff', who lack knowledge in this cause.

BASED upon this unreliable hearsay EVIDENCE the CMS Has essentially Destroyed the plaintiff's MEDICAL practice.

On appeal to The Administrative Law Judge a decision was MADE upholding the ACTION TAKEN: IN EFFECT it was a SUMMARY Judgment; SINCE THERE WERE MANY Disputed FACTS this decision Should NOT been RENDERED without A hearing. THIS VIOLATED RULE 56 of The FEDERAL RULES OF civil procedure.

The DEPARTMENTAL APPEALS BOARD Rubber-Stamped the decision of The a.l.j.; failed to provide A fair Hearing As DEMANDED By the plaintiff, furthermore failed to conduct a tRIAL DENOVO and admit Any ADDITIONAL REASONABLE testimony or EVIDENCE.

Attached and incorporated HEREIN ARE THE MEDICAL RECORDS OF those five patients At the Sullivan APARTMENTS

Also, attached and incorporated herein are the decisions of The Administrative LAW Judge and Department AL APPEALS Board Respectively.

EX. 15



## ARGUMENT

THE SANCTION FOR ABUSE OF MEDICAL PRIVILEGES IS 1-3 YEARS. WPS BARRED this plaintiff for The MAXIMUM BASED ON UNFOUNDED ACCUSATIONS. The LEAST That this tribunal could do for the sake of JUSTICE IS MAKE A RULING THAT time HAS BEEN SERVED.

the CPT 99349 STATES That LEVEL III CARE IS PROVIDED. the plaintiff has produced evidence That he CAREFULLY EXAMINES his PATIENTS EACH visit because of the serious problems. And he qualifies to be reimbursed for payment under that code. the forty minutes mentioned is JUST a guideline And unconstitutional as Applied, especially in view that the patients are evaluated and treated twice weekly. the 40 minute session would cause Anxiety and mistrust Among the patients. As one patient from 1633 W Madison stated (SAMUEL Monroe) "do they expect us to live together?"

the proximity of the patients residing in the same Apartment complex obviates travel time. the scurrilous remarks of the Administrative law judge that there is not enough time in the day to see twenty-five patients is prejudicial And abuse of discretion.

Since the investigator for OIG failed to interview Any of the patients at 1633 W. Madison St Chicago, Illinois (Sullivan Apartments), it makes it All the more incredulous that his totally hearsay Report would have Any weight in this matter.

Clearly looking at the regulation 42 CFR 424.535(a)(8), this Applies only where the services could Not have been provided per the examples shown: Patient out of State or Equipment Not present. this cannot be a valid reason under the circumstances. As previously argued this would fall on whether the correct code was used for less payment. the corollary, incidentally, for equivalent OFFICE Visit LEVEL III CARE Does Not specify Any time requirement (see Record)

(·0)

the decision by the DEPARTMENTAL APPEALS
BOARD was strictly Rubber-stamped. It
failed to conduct a Trial DE NOVO
under the regulations.

this REVIEW is Validated by
42 CFR 405.1877, brought within
the sixty days of the DAB's decision
And permitting the Secretary of CMS
as defendant.

the administrative law Judge and
the DAB on the record failed to
weigh the evidence of the MEDICAL
RECORDS against the hearsay evidence
introduced. To conclude that SERVICES
were not provided would be a STARK
OXYMORON.

Also, 016's contention and innuendo
that I treated 40 patients on the
same day obviates the truth. I
encountered the forty patients over
a two day period REMAINING overnight
at a hotel.

Also there is a false presumption
among investigative teams that r/ the
same code 99345 is billed conventionally
there is a thief in the house

CMS has attempted to beef up its case against petitioner Grason that since the code for billing was invariably for hypertension that is the only medical problem faced by the patients and therefore didn't require level III care. Petitioner did not feel it necessary to bill for all the diagnoses on each patient, but offered conclusive evidence that the five patients at the Sullivan Apartments had other serious medical problems: (1) WALTER OLESON: Gout, diabetes, intra cardiac device, coronary artery disease, and cancer of the proximal esophagus; (2) SAMUEL MONROE: Depression, Alcoholism, Asthma, degenerative Arthritis, Piriformis syndrome? herniated lumbar disc; (3) Lureen Rogers: diabetes, s/p stroke, Heart Disease, Chronic Asthma, opiod dependence and severe disabling diabetic polyneuropathy whereby she had to be carried to the restroom. Robert Richardson - labile hypertension, paroxysmal orthostatic tachycardia syndrome, mitral valve prolapse, Post traumatic stress disorder (ex-veteran); (5) Jinnie Hedrick: hypertension, Diabetes, Asthma, Bipolar disorder, coronary disease, Aortic stenosis asymptomatic carotid bruit.

I have submitted this information to the administrative law judge (A.L.J.) and DAB also. These medical records were initially in the record on first appeal, and should have been given weight and credibility.

(12)

On the other hand it was the beurocrats WPS. accusing me of fraudent activity if I provided my patients with carfare funds to travel to the University of Chicago hospital when I was unable to drive them there. Or if I could not find my patient at home but discovered him in another location and I traveled there for the consultation, that this didn't fit the definition of home visit.

So far this petitioner is experiencing the whole kit and caboodle: loss of billing privileges and practice, non payment for services, unjustifiable huge indebtedness leading to undue hardship, and possible sanctions against his medical license by IDFPR thus all due to beurocratic non-sense.

Due process required the A.L.J and DAB to conduct a fair hearing instead of a summary judgment based on disputed facts; and the latter (DAB) not only failed to conduct a trial de novo but also failed to hold a hearing as required.

In the decision of the a.L.J. statement was made that even if the visitor logs were inadmissable per se. it would be covered under "business records." I ask whose business records? Certainly not mine and logs don't constitute business records by definition. Moreover 42 CFR 422.1082 required the DAB to admit any new additional evidence into the record. This was not done because no opportunity for a hearing was granted.

(13)

Also, it is a matter of public record that the current Administration in Washington is attempting to finance the medicare program by seeking 50 billion dollars from the health professions as overpayments. I ask this tribunal to make judicial notice and conclude that the $750,000 CMS seeks is unjustified and cruel.

HHS suggests that I should delegate my services to a home health care agency. It is alleged that I don't have an office; these allegations on their face are wrong. Older patients respond well to home visits, especially continuous CARE.

Witnesses must give testimony at the hearing 42 CFR 93.518. No hearing was ever conducted nor witnesses presented. What evidence was introduced to verify the accuracy of the visitor logs? NONE. thus again due process was violated under 42 CFR 982.1(a)(1).

Furthermore, at all times plaintiff demanded that the denial of claims submitted AFTER October 10, 2012 be RECONSIDERED. This was not done. Nor was the overpayment of $750,000 properly adjudicated on appeal. These were issues presented to both the alj and DAB but no rulings determined.

(14)

## CONCLUSIONS

GRASON PLAINTIFF MOVES This DISTRICT COURT to REVIEW ALL PLEADINGS, MOTIONS, AND EVIDENCE PRESENTED IN THE FIVE-Step Appeals process, including The decisions of THE DEPARTMENTAL APPEALS BOARD AND RULE The following:

1) That the decisions RENDERED, findings and conclusions of LAW ARE NOT justified. That the decision to REVOKE MEDICARE billing PRIVILEGES WAS MALICIOUS AND without probable CAUSE IN THAT a FAIR HEARING AND opportunity TO be heard was NEVER CONDUCTED, violating procedural due process OF THE FOURTEENTH AMENDMENT.

2) CONSIDER the denial of ALL Claims FOR PAYMENT UNDER MEDICARE ASSIGNMENTS

3) ISSUE a temporary RESTRAINING ORDER without notice, PRELIMINARY AND PERMANENT INJUNCTIONS against FURTHER ATTACHMENTS OF his social security income;

4) that the Alleged indebtedness FOR OVERPAYMENTS be declared null and VOID SINCE APPROPRIATE SERVICES WERE RENDERED to patients from 2009-2011 based on MEDICAL RECORDS Audited by WPS.

5) that ACTUAL damages FOR LOSS OF MEDICAL practice AND income be assessed AGAINST CMS (Secretary). IN ADDITION plaintiff SEEKS punitive damages FOR THE witch hunt That WAS CONDUCTED. Plaintiff Grason has been PROVIDING MEDICAL CARE through home visits SINCE 1998. without ANY ATTACK prior thereto upon his integrity.

6) ISSUE A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AGAINST THE ILLINOIS DEPARTMENT OF FINANCIAL and professional REGULATION FROM ATTEMPTING to RESCIND or SANCTION his STATE MEDICAL LICENSE 036043747 SINCE it LACKS Jurisdiction until ALL Judicial REVIEW of The agency's final Action (DAB) is completed. Submitted by

RONALD J. GRASON, PROSE
357 W. DECATUR STREET
DECATUR ILLINOIS 62522
217-428-8600
Email: grasonLawmed@gmail.com (15)

RONALD GRASON, plaintiff

date: October 25, 2014

Department of Health and Human Services

DEPARTMENTAL APPEALS BOARD

Civil Remedies Division

Ronald J. Grason, M.D.,
(PTAN: 216496)
(NPI: 1801060538)

Petitioner,

v.

Centers for Medicare & Medicaid Services

Docket No. C-14-394

Decision No. CR3215

Date: May 2, 2014

# DECISION

Petitioner, Ronald J. Grason, M.D., is a physician, practicing in Illinois, who, until recently, participated in the Medicare program. The Centers for Medicare & Medicaid Services (CMS) has revoked his billing privileges, citing abusive billing practices. Petitioner appeals.

For the reasons explained below, I find that Dr. Grason repeatedly billed the Medicare program for services he did not provide and that CMS properly revoked his billing privileges.

## Background

By letter dated May 9, 2013, the Medicare contractor, Wisconsin Physicians Service Insurance Corporation, advised Dr. Grason that his Medicare billing privileges were revoked, effective June 8, 2013. The contractor took this action pursuant to 42 C.F.R. § 424.535(a)(8), because it found that Dr. Grason submitted multiple claims for services that he could not have furnished as billed. CMS Exhibit (Ex.) 1.

Dept A

2

Petitioner requested reconsideration. In a reconsidered determination, dated August 29, 2013, the contractor upheld the revocation. CMS Ex. 4. Petitioner eventually appealed, and his appeal is now before me. CMS Ex. 5. CMS has filed a motion to dismiss, because Petitioner's hearing request was not timely filed. As alternatives, CMS asks that I enter summary judgment in its favor or that I issue a decision based on the written record.

I decline to rule on CMS's motion to dismiss and, for the reasons set forth below, deny its motion for summary judgment.[1] However, because CMS presents no witnesses and has not asked to cross-examine Petitioner's witnesses, this case is ready for a decision based on the written record.[2]

With its motions, CMS filed a brief (CMS Br.) and 14 exhibits (CMS Exs. 1-14). Petitioner objected to CMS's motions (P. Br.) and filed five exhibits (P. Exs. 1-5). I admit into evidence CMS Exs. 1-14 and P. Exs. 1-5. I discuss below Petitioner's objections to some of CMS's exhibits.

## Discussion

CMS, acting on behalf of the Secretary of Health and Human Services, may revoke a supplier's billing privileges if he abuses them, specifically, if he submits a claim or claims for services that he could not have furnished to a specific individual on the date of service. 42 C.F.R. § 424.535(a)(8).

---

[1] Petitioner concedes that he did not appeal timely, but claims that his health issues constitute good cause for the late filing. His evidence suggests that for some – but not all – of the 60 days immediately prior to the appeal deadline, his health issues likely impeded his ability to file. Rather than address the difficult question of whether sporadic health issues constitute good cause for his failure to file timely, I move on to the more-easily-resolved merits.

[2] As I discuss below, CMS relies on documents that are not accompanied by testimony from those who created them. Had Petitioner asked that CMS produce the drafters of these documents (Agent Minden, Sullivan Apartments personnel) for cross-examination, I would have been compelled to order it. However, Petitioner made no such request.

3

*1. CMS is not entitled to summary judgment, because Petitioner disputes a material fact.*[3]

CMS has moved for summary judgment, arguing that no material facts are in dispute. Summary judgment is appropriate when a case presents no issue of material fact, and its resolution turns on questions of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *1886ICPayday.com, L.L.C.*, DAB No. 2289 at 2-3 (2009); *Illinois Knights Templar Home*, DAB No. 2274 at 3-4 (2009), *citing Kingsville Nursing Ctr.*, DAB No. 2234 at 3-4 (2009); *Livingston Care Ctr. v. U.S. Dep't of Health & Human Servs.*, 388 F.3d 168, 173 (6th Cir. 2004). The moving party may show the absence of a genuine factual dispute by presenting evidence so one-sided that it must prevail as a matter of law, or by showing that the non-moving party has presented no evidence "sufficient to establish the existence of an element essential to [that party's] case, and on which [the party] will bear the burden of proof at trial." *Livingston Care Ctr.*, 388 F.3d at 173 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

This case turns on questions of fact: whether, on December 23, 2011 and February 14, 2012, Dr. Grason provided the services – for which he billed the Medicare program – to five Medicare beneficiaries residing in a senior-citizen apartment complex. CMS points to the building's visitor sign-in sheets, which show that Dr. Grason was physically present for fifteen minutes or less on each of those days. CMS Exs. 7, 9. According to CMS, because Dr. Grason was in the building for such a short time, he could not possibly have provided the services for which he billed Medicare. For his part, Dr. Grason claims that he provided these services and more, and he attacks the reliability of the sign-in sheets. According to Dr. Grason, security staff did not ask him to produce identification, but just waved and buzzed him in. He did not generally check out at the security desk when he left the building, and "it [was] not uncommon" for building staff to sign him out five minutes after he arrived, even though he was there for more than three hours. P. Ex. 2 at 2; P. Br. at 1.[4]

_____

[3] My findings of fact/conclusions of law are set forth, in italics and bold, in the discussion captions of this decision.

[4] I recognize that Petitioner, who is not represented by counsel, did not submit a written declaration testifying to these facts. Instead, they are included in his objections to CMS's motions and in his correspondence to the Medicare contractor. As such, the statements could be considered arguments of counsel and hearsay, which, under the rules of evidence, might not be admissible to establish the truth of the underlying facts. However, the rules of evidence do not apply in these proceedings. 42 C.F.R. § 498.61. Moreover, the evidence upon which CMS relies – the investigator's report and the visitor sign-in sheets – could also be considered problematic, inasmuch as CMS did not provide

4

In ruling on a motion for summary judgment, I must draw all reasonable inferences in the light most favorable to the non-moving party. The sign-in sheets are evidence that Dr. Grason was not physically present in the building long enough to provide the services for which he billed Medicare. However, if I accepted as true Dr. Grason's statements as to the manner in which those documents were produced, I could reasonably infer that they are not reliable. Petitioner has therefore established a dispute of material fact, which precludes my entering summary judgment.

I therefore deny CMS's motion for summary judgment.

Nevertheless, because neither party justifies my convening an in-person hearing, I close the record and decide the case. My pre-hearing order directs the parties to file, among other submissions, a list of all proposed witnesses, and to include, as a proposed exhibit, the written direct testimony of any proposed witness. Acknowledgment and Pre-hearing Order (Order) at ¶¶ 4(c)(iv), 8. The order explains that an in-person hearing is necessary only if a party files a witness's admissible, written direct testimony, and the opposing party asks to cross-examine. Order ¶ 10. Because neither party asks to cross-examine any witness, the case can be decided based on the written record.

> **2. A preponderance of evidence establishes that, on December 23, 2011 and February 14, 2012, Dr. Grason could not have furnished the services – for which he submitted claims to the Medicare program  – to five Medicare beneficiaries.**

Burdens of proof. In supplier appeals brought under 42 C.F.R. Part 498, the parties' relative burdens of proof are well-established. CMS must come forward with evidence that establishes a prima facie case. Once CMS meets this burden, the provider must prove his case by a preponderance of the evidence. *MediSource Corp.*, DAB No. 2011 at 2-3 (2006), *citing Batavia Nursing & Convalescent Ctr.*, DAB No. 1904 (2004), *aff'd, Batavia Nursing & Convalescent Ctr. v. Thompson*, No. 04-3325 (6th Cir. 2005).

The CPT. The Current Procedural Terminology (CPT) is a set of codes used to describe medical, surgical, and diagnostic services. CPT Code 99349 describes a physician's "evaluation and management" of an established patient in the patient's home. It requires at least two of three key components:  1) detailed interval history; 2) detailed examination; and 3) medical decision-making of moderate complexity. CMS Ex. 13 at 2. According to CMS's claims processing manual, such a home visit should take forty minutes to complete. CMS Ex. 14 at 2-3.

---

declarations from the investigator and security personnel establishing their authenticity. Under our more relaxed rules, however, all of the evidence comes in.

5

Facts. Dr. Grason is a physician who was living in Decatur, Illinois in 2011-2012, and participating in the Medicare program. He had no office and his practice was limited. Twice a week, every week, he made the three-hour drive from Decatur to Chicago. There, he purportedly visited the same 25-40 patients, who resided in senior-citizen retirement buildings. According to his billing records, all of his patients suffered from hypertension. He generally listed no other diagnoses. Virtually without exception, he billed the Medicare program for a "medium-high complexity home visit" (CPT Code 99349) for each patient. CMS Ex. 6 at 1. In the two and a half years immediately prior to the Inspector General's investigation of his billing practices, the Medicare program paid Dr. Grason approximately $730,000 for these types of claims. CMS Ex. 6 at 1; see CMS Ex. 13.

CMS limits this case to five Medicare beneficiaries, all residing in the Patrick Sullivan Apartments, a senior-retirement housing complex in Chicago. CMS Ex. 12 at 1. The complex consists of two towers, North and South, of at least 20 stories each. CMS Ex. 6 at 2. Three of the five beneficiaries resided in the north tower, each on a different floor. Two resided in the south tower, each on a different floor. CMS Ex. 12. Each tower has one elevator. To move from one tower to the other, a visitor must pass through the ground floor lobby. Visitors to either tower are signed in by an attendant at a common security access point. CMS Ex. 6 at 2.

Timothy Minden, a special agent with HHS's Office of Inspector General, interviewed about thirty of Dr. Grason's patients, along with staff from their building complex, and obtained the building's visitor sign-in sheets. CMS Ex. 6 at 1. According to the December 23, 2011 sheet, at 6:37 a.m., Ronald Grason arrived to see a building tenant named Monroe. Dr. Grason departed thirteen minutes later, at 6:50 a.m. CMS Ex. 7 at 1. He did not return. CMS Ex. 6 at 2; CMS Ex. 7. Agent Minden confirmed these entries with building staff. CMS Ex. 6 at 1.

CMS's record of Dr. Grason's billings for December 23, 2011 shows that he submitted claims for services he purportedly provided to 24 patients that day, including Mr. Monroe and the four other Sullivan Apartment residents on whom CMS has focused its attention. CMS Exs. 6, 8.

Similarly, on February 14, 2012, the visitor sign-in sheet shows that Dr. Grason arrived at the building at 6:33 a.m. and departed fifteen minutes later, at 6:48 a.m. CMS Ex. 9 at 1. For that day, he billed the Medicare program for services he purportedly provided to 25 patients, including the five residing at Patrick Sullivan Apartments. CMS Ex. 10.

Analysis. Petitioner objects to my admitting into evidence the visitor logs. He argues that they are inherently unreliable, factually untrue, and would not be admitted under the federal rules of evidence. I recognize that the foundation for these documents is a little weak; however, even under the rules of evidence they would likely be admissible as

6

business records, and, given the more relaxed rules that govern these proceedings, are certainly admissible.[5] The sign-in sheets, together with Special Agent Minden's report, establish a prima facie case that, on December 23 and February 14, Dr. Grason could not have furnished services to the five individuals as he claimed.

Dr. Grason offers no persuasive evidence to rebut CMS's case. He submits a written declaration signed by four of the five named patients. The declaration does nothing to counter CMS's prima facie case. The patients declare that Dr. Grason has been their attending physician for many years, that his services are necessary, that he visits twice a week at the patient's request. Otherwise, they say, they would have to go to the hospital. They would like the relationship to continue and "abhor any interference with [the] doctor-patient relationship." P. Ex. 3 at 4. The patients say nothing about Dr. Grason's visiting them on December 23, 2011 or February 14, 2012. They say nothing about the length of his visits. Nor do they specify what services he performs during those visits.

Nor does Dr. Grason offer any treatment notes, patient records, or other evidence showing that he performed the services for which he billed the Medicare program.

Dr. Grason challenges the CMS manual provision that a physician's home visit billed under CPT Code 99349 should take approximately 40 minutes. He argues that this is a guideline, "impractical in the medical realm," which fails to take into account the physician's experience and competence. P. Br. at 5. While I might accept the proposition that an experienced physician could perform the home visit – including the required two of three components (detailed interval history, detailed examination, moderately complex medical decision) – in less than forty minutes, I find that no one is capable of performing five such visits in less than fifteen minutes, particularly where, as here, doing so involves moving from floor to floor and even tower to tower.

Dr. Grason also argues that CMS has not proved its case, because it has not submitted evidence establishing a pattern of abuse. P. Br. at 6. First, the regulation does not require a "pattern" of abuse. It plainly authorizes CMS to act if the supplier "submits *a claim* . . . that could not have been furnished. . . ." 42 C.F.R. § 424.535(a)(8) (emphasis added). I recognize that language from the regulation's preamble suggests that CMS does not intend to revoke billing privileges in response to an isolated occurrence or an accidental billing error, but will generally act when it finds "multiple instances, at least three," abusive billing practices. 73 Fed. Reg. 36,448, 36,455 (June 27, 2008). Nevertheless, the language of the preamble should not preclude CMS from following the plain language of

---

[5] Moreover, his attacks on the records raise questions that he has not addressed. For example, if building staff only waved him in on the days in question, how would they know which tenant he was visiting?

7

the regulation. *See Louis J. Gaefke, D.P.M.*, DAB CR2785 at 7-8 (2013), *aff'd*, DAB No. 2554 (2013). In any event, ten incorrect billings submitted over two days constitutes a pattern within the meaning of the preamble.

Moreover, Dr. Grason's billing records for December 23 and February 14 establish billing practices that could not possibly reflect the services he actually rendered on those days. According to the billing records, Dr. Grason claimed to have provided services to 24 patients on one day (December 23, 2011) and 25 patients on another day (February 14, 2012). CMS Exs. 8, 10. At 40 minutes per visit, that means he would have spent 16 hours each of these days treating patients, plus the commute time – 3 hours to Chicago and 3 hours home – and the additional time required to move between patients. It seems there are not enough hours in the day to account for Dr. Grason's billings.

Petitioner also raises arguments that are irrelevant to the limited issue before me. He claims that he provides additional services for which he does not bill the Medicare program. He concedes that he listed the same diagnosis for each patient, but argues that they all had multiple diagnoses, for which he prescribes many drugs. These arguments do not establish that, on December 23 and February 14, he provided the services for which he billed Medicare.

Finally, I have no authority to consider Petitioner's due process arguments. Nor do I have jurisdiction over the significant overpayment that CMS is apparently demanding from Dr. Grason. *See* 42 C.F.R. § 498.3.

## Conclusion

CMS has come forward with evidence that Petitioner Grason billed the Medicare program for services that he did not provide. Petitioner has not established that he provided those services. I therefore find that he billed the Medicare program for services he did not provide and that CMS properly revoked his billing privileges.

_____/s/_____
Carolyn Cozad Hughes
Administrative Law Judge

Department of Health and Human Services
**DEPARTMENTAL APPEALS BOARD**
Appellate Division

Ronald J. Grason, M.D.
Docket No. A-14-84
Decision No. 2592
September 15, 2014

## FINAL DECISION ON REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

Petitioner, Ronald J. Grason, M.D., requests review of the May 2, 2014 decision of an Administrative Law Judge (ALJ) sustaining the revocation of his Medicare billing privileges. *Ronald J. Grason, M.D.*, DAB CR3215 (2014) (ALJ Decision). The ALJ concluded that Petitioner abused his billing privileges within the meaning of 42 C.F.R. § 424.535(a)(8) by billing the Medicare program for services he could not have provided to five beneficiaries on two days. For the reasons explained below, we sustain the ALJ Decision.

### Applicable law

The regulation at 42 C.F.R. § 424.535(a)(8), "Abuse of billing privileges," states that CMS may revoke a provider's or supplier's Medicare billing privileges and any corresponding provider or supplier agreement for the following reason:[1]

> (8) *Abuse of billing privileges*. The provider or supplier submits a claim or claims for services that could not have been furnished to a specific individual on the date of service. These instances include but are not limited to situations where the beneficiary is deceased, the directing physician or beneficiary is not in the State or country when services were furnished, or when the equipment necessary for testing is not present where the testing is said to have occurred.

Revocation results in the termination of the provider's or supplier's agreement with Medicare as well as a ban on re-enrollment for at least one year, but no more than three years. 42 C.F.R. § 424.535(b)-(c). A supplier whose Medicare enrollment has been

---

[1] A "supplier" is "a physician or other practitioner, or an entity other than a provider, that furnishes health care services under Medicare." 42 C.F.R. § 400.202; *see also* Social Security Act § 1861(d) (42 U.S.C. § 1395x(d)) ("The term 'supplier' means, unless the context otherwise requires, a physician or other practitioner . . . that furnishes items or services under this title.").

2

revoked may request reconsideration by CMS, and then appeal CMS's reconsideration
decision in accordance with the procedures at 42 C.F.R. Part 498. 42 C.F.R.
§§ 424.545(a), 498.5(l)(1), 498.22(a).

## Case Background[2]

Petitioner is a physician whose practice during the period 2011-2012 consisted of
traveling three hours from his home in Decatur, Illinois to Chicago, twice a week, to visit
the same 25 to 40 patients who resided in senior-citizen retirement buildings.  ALJ
Decision at 5, citing CMS Ex. 6.  He generally billed the Medicare program for "a
physician's home visit for the evaluation and management of an established patient"
under "CPT Code 99349" for each patient.[3]  *Id*.  CPT Code 99349 requires at least two of
these three key components:  detailed interval history, detailed examination and medical
decision making of moderate complexity.  ALJ Decision at 4, citing CMS Ex. 13 at 2.
CMS's claims processing manual states a "typical time" of 40 minutes for CPT Code
99349.  *Id*. citing CMS Ex. 14, at 2-3.

Wisconsin Physician Services Insurance Corporation (WPS), a CMS Medicare
contractor, notified Petitioner in a letter dated May 9, 2013 that his Medicare billing
privileges were being revoked for three years effective June 8, 2013 under 42 C.F.R.
§ 424.535(a)(8).  CMS Ex. 1.  WPS determined that Petitioner could not have furnished
the physician services he claimed to have provided to five patients on December 23, 2011
and February 14, 2012 "[g]iven the CPT code you billed to Medicare, the number of
beneficiaries you billed for and the total time spent in the apartment complex" where the
patients lived.  CMS Ex. 1.  It is not disputed that Petitioner billed Medicare for CPT
Code 99349 for each of the five patients for services he claimed to have rendered on
those two days.  CMS Exs. 6, 8, 10.

WPS based the revocation on evidence indicating that Petitioner was in the apartment
complex where the five patients lived for 15 minutes or less on each of the two days for
which Petitioner billed Medicare for the five home visit examinations, which CMS
estimates should take 40 minutes each to complete.  The evidence consists of reports of a
special agent with HHS's Office of Inspector General (OIG) and the apartment complex's

---

[2]  The information in this section is drawn from undisputed findings in the ALJ Decision and the record
exhibits and is presented to provide a context for the discussion of the issues raised on appeal.  Nothing in this
section is intended to replace, modify, or supplement the ALJ's findings of fact or conclusions of law.

[3]  CPT (Current Procedural Terminology) codes are numeric codes maintained by the American Medical
Association that are used to describe medical, surgical, and diagnostic services and procedures furnished by
physicians and other health care professionals.  ALJ Decision at 4; *Realhab, Inc.*, DAB No. 2542, at 6 (2014).

3

visitor logs or sign-in sheets for December 23, 2011 and February 14, 2012, the two days on which Petitioner claimed to have provided the services to the five patients. CMS Exs. 6, 7, 11, 12. The OIG agent interviewed 30 of Petitioner's patients, reviewed billing records, and visited the apartment complex. *Id.*

The OIG agent reported that the apartment complex consisted of a north and a south tower, each with at least 20 stories and one elevator. ALJ Decision at 5, citing CMS Exs. 6, at 2; 12. The towers were connected by a ground-floor lobby through which anyone proceeding from one tower to the other would have to pass; visitors to either tower are signed in by an attendant at a common security access point. *Id.* Three of the five beneficiaries resided in the north tower, each on a different floor, and two resided in the south tower, each on a different floor. *Id.* The visitor logs indicate that on December 23, 2011, Petitioner entered the building at 6:37 a.m. and departed at 6:50 a.m. and did not return, and that on February 14, 2012 Petitioner arrived at 6:33 a.m. and departed at 6:48 a.m. *Id.* citing CMS Ex. 9, at 1.

WPS upheld the revocation in a reconsideration decision on August 29, 2013, and Petitioner on November 29, 2013 requested an ALJ hearing. CMS Exs. 4, 5. CMS moved for summary disposition and for dismissal of the hearing request as untimely and filed 14 exhibits. Petitioner objected to CMS's motions and filed five exhibits. The ALJ admitted the parties' exhibits into evidence.

The ALJ denied CMS's motion for summary judgment on the ground that the case presented a material issue of fact concerning whether Petitioner was in the apartment complex long enough to have performed the claimed services. The ALJ decided the case based on the written record as neither party asked to cross-examine witnesses. ALJ Decision at 2. The ALJ found and concluded that "[a] preponderance of evidence establishes that, on December 23, 2011 and February 14, 2012, [Petitioner] could not have furnished the services – for which he submitted claims to the Medicare program – to five Medicare beneficiaries." [4] ALJ Decision at 4. Petitioner timely requested review of the ALJ Decision.

## Standard of Review

Our standard of review on a disputed conclusion of law is whether the ALJ decision is erroneous. Our standard of review on a disputed finding of fact is whether the ALJ decision is supported by substantial evidence on the record as a whole. *See Guidelines — Appellate Review of Decisions of Administrative Law Judges Affecting a Provider's*

---

[4] The ALJ did not rule on CMS's motion to dismiss, or Petitioner's argument that his health issues constituted good cause for the untimeliness, in favor of addressing "the more-easily-resolved merits" of the case. ALJ Decision at 2 n.1.

4

*Participation in the Medicare and Medicaid Programs,*
http://www.hhs.gov/dab/divisions/appellate/guidelines/prov.html.  The Board may
modify, affirm, or reverse an ALJ Decision.  42 C.F.R. § 498.88(f)(1)(3).

## Analysis

A.  Petitioner's criticisms of CMS's evidence demonstrate no error in the ALJ
Decision.

Petitioner primarily argues that the ALJ improperly relied on hearsay evidence that was
inadmissible under the Federal Rules of Evidence.  P. Request for Review of ALJ
Decision (RR) at 2.  Petitioner argues that the visitor logs showing that he was in the
apartment complex for less than 15 minutes on the two days he claimed to have provided
the services to the five patients were "not signed, [not] under oath, and [were]
unreliable."  RR at 2-3.  The OIG agent's reports, Petitioner argues, were "not based on
his own observations or witnessing, but attributed to conversations he conducted at the
building site."  RR at 2-3.

Petitioner's argument that some of CMS's evidence was not admissible under federal
rules does not furnish a basis to reverse the ALJ Decision.  As the ALJ correctly pointed
out, "the rules of evidence do not apply in these proceedings."  ALJ Decision at 3 n.4,
citing 42 C.F.R. § 498.61 ("Evidence may be received at the hearing even though
inadmissible under the rules of evidence applicable to court procedure.  The ALJ rules on
the admissibility of evidence.").  Indeed, the ALJ in his prehearing order setting the
procedures for the appeal did not adopt the Federal Rules of Evidence and cited only the
regulations at Part 498 and the Civil Remedies Division's Procedures which, like Part
498, state that the ALJ is not bound by the Federal Rules of Evidence.

The ALJ also noted that Petitioner could have, but did not, request that the ALJ order
CMS to produce the OIG agent and personnel of the apartment complex for cross-
examination.  ALJ Decision at 2 n.2.  Petitioner does not identify any statements in the
OIG agent's report that Petitioner alleges are false.  Petitioner does not, for example,
dispute the OIG agent's description of the apartment complex or the locations of the
patients' apartments.

Petitioner questions the accuracy of the visitor logs, asserting that he is hardly ever
requested to show a photo ID when entering the apartment complex, that the guards
"wave at me and buzz me in," and that "I never checkout at the security desk when I exit
the building [so that] anytime recorded as to the length of time spent in the building is

5

merely guess work."[5]  P. Ex. 2, at 2; ALJ Decision at 3.  Petitioner has also questioned the accuracy of visitor logs in general, asserting that "it is not uncommon for me to be present in a senior residential building for more than three hours and discover that someone at the security desk signed me out five minutes after I had arrived."  CMS Ex. 2, at 3.

Petitioner's general criticisms of the reliability of visitor logs include no allegation that he was in the apartment complex on December 23, 2011 or February 14, 2012 for longer than the visitor logs indicate.  Contemporaneous treatment notes or patient records showing the specific services Petitioner rendered to the five patients on those days, if sufficiently reliable, might have called into question the accuracy of the visitor logs.  As the ALJ noted, and as we discuss in the next section, Petitioner provided no such evidence.  ALJ Decision at 6.  Thus, Petitioner's arguments regarding the Federal Rules of Evidence and the reliability of CMS's evidence in general do not show that the ALJ erred in considering that evidence, especially given Petitioner's failure to provide evidence of the specific services he provided to the five patients on the two days at issue.

B.  Petitioner failed to demonstrate that he provided services under CPT Code 99349 to the five patients on December 23, 2011 or February 14, 2012.

The ALJ concluded that the visitor logs together with the OIG agent's report "establish a prima facie case that, on December 23 and February 14, [Petitioner] could not have furnished services to the five individuals as he claimed" and that "CMS has come forward with evidence that Petitioner . . . billed the Medicare program for services that he did not provide."  ALJ Decision at 6-7.  The ALJ further concluded that Petitioner "offers no persuasive evidence to rebut CMS's case" and "has not established that he provided those services."  Id.  In reaching those conclusions, the ALJ applied the "well-established" "relative burdens of proof" the Board has applied in appeals under 42 C.F.R. Part 498:  "CMS must come forward with evidence that establishes a prima facie case. Once CMS meets this burden, the provider must prove his case by a preponderance of the evidence."  Id. at 4, citing MediSource Corp., DAB No. 2011, at 2-3 (2006), citing Batavia Nursing & Convalescent Ctr., DAB No. 1904 (2004), aff'd, Batavia Nursing & Convalescent Ctr. v. Thompson, 129 F. App'x 181 (6th Cir. 2005).

Petitioner "object[s] to the finding that CPT 99349 (home visit) requires at least 40 minutes face to face with the patient."  RR at 2.  Petitioner argued below that his experience practicing medicine for 44 years enables him to quickly diagnose the ailments of his elderly patients and that he need not spend 40 minutes with each patient on each

---

[5]  The ALJ treated Petitioner's factual assertions in his request for reconsideration and his opposition to CMS's motions for dismissal or summary disposition as declaration testimony, although they were not in the form of declarations.  ALJ Decision at 4-5 n.4.  The ALJ noted that rules of evidence for court proceedings do not apply in proceedings under Part 498.  Id.

6

visit in order to render appropriate care, because of his experience and because he sees patients twice each week. *See, e.g.,* P. Opposition to CMS Motions (P. Br.) at 5 ("40 minutes in the 99349 code . . . fails to take into account the experience and competence of the provider."). On appeal, Petitioner states that he provides many services to his patients for which he does not bill Medicare, and that after he has visited his patients he performs various tasks such as "making appointments, ordering medicines or tests and completing my progress notes." RR at 5; *see also* P. Br. at 4, 6 ("Petitioner provides comprehensive care by necessity to patients [who] have a multitude of complex medical problems I need to address each visit time . . . Besides the home visit I am required to spend additional time phoning in prescriptions ordering tests, making consultations, medical research").

We first note, as did the ALJ, that to have provided the services claimed under CPT Code 99349, Petitioner would have had to have performed two of the three components – detailed interval history, detailed examination, moderately complex medical decision – for each of five patients who resided on different floors and in two different towers. The ALJ found, even accepting "that an experienced physician could perform the home visit – including the required two of three components . . . in less than forty minutes . . . that no one is capable of performing five such visits in less than fifteen minutes," the approximate times Petitioner was in the building according to the visitor logs, "particularly where, as here, doing so involves moving from floor to floor and even tower to tower." ALJ Decision at 6.

Nothing in the record undermines the ALJ's finding. Significantly, Petitioner has offered no evidence, or even alleged, that on December 23, 2011 and February 14, 2012 he provided to the five patients the procedures required to claim Medicare reimbursement for physician's home visits under Code 99349. As the ALJ stated, Petitioner did not "offer any treatment notes, patient records, or other evidence showing that he performed the services for which he billed the Medicare program" on the days in question. *Id.* Petitioner does not dispute that finding. Indeed, the only evidence Petitioner produced relating specifically to the five patients who resided in the apartment complex was a joint affidavit of four patients expressing their general satisfaction with Petitioner's services. P. Ex. 3, at 4. That affidavit, as the ALJ stated, "say[s] nothing about [Petitioner]'s visiting them on December 23, 2011 or February 14, 2012 [and] nothing about the length of his visits" and did not "specify what services he performed during those visits." ALJ Decision at 6.[6]

---

[6] Petitioner's request for review includes 11 exhibits, some of which duplicate materials in the parties' exhibits before the ALJ. The regulations forbid us from considering evidence not provided on reconsideration or before the ALJ. Section 498.86(a) of 42 C.F.R. provides for the admission of additional evidence before the Board "except for provider and supplier enrollment appeals." This is a provider appeal, and our review is thus limited to the evidence the ALJ admitted into the record. In any event, none of the additional exhibits indicate that Petitioner provided the Code 99349 services to the five patients on the two days at issue.

7

Similarly, Petitioner's general descriptions of how he practices medicine and serves patients include no specific allegation, let alone any documentary evidence, that he rendered to the five patients the services required for a physician's home visits under Code 99349 on the days at issue.

Absent evidence of what services Petitioner actually provided to the five patients on December 23, 2011 or February 14, 2012, the ALJ correctly found that Petitioner failed to rebut CMS's evidence that he was not in the apartment complex long enough to have provided the claimed services. *See* 73 Fed. Reg. 36,448, 36,452 (June 27, 2008) ("<u>a provider or supplier</u> is <u>required to furnish the evidence that demonstrates that the Medicare contractor made an error</u> at the time an adverse determination was made, not that the provider or supplier is now in compliance . . . it is essential that <u>providers and suppliers submit documentation that supports their eligibility to participate in the Medicare program</u> during the reconsideration step of the provider enrollment appeals process") (emphasis added).

C. Petitioner's other arguments demonstrate no error in the ALJ Decision.

Petitioner "objects to the lengthy process for appeals (twenty months thus far) as a violation of procedural due process, specifically denying him an opportunity for an immediate unbiased hearing and final determination." RR at 2. Petitioner does not cite any provision in the law or regulations, nor are we aware of any, requiring an "immediate" hearing and determination following the revocation of billing privileges under 42 C.F.R. § 424.535(a)(8). The Board has held, in the context of revocations based on other provisions of Part 424, that providers or suppliers are not entitled to pre-revocation hearings. *1866ICPayday.com, L.L.C.*, DAB No. 2289, at 14-15 (2009) (nothing in the law granting hearing rights for suppliers requires that the hearing be a pre-revocation hearing); *see also Fady Fayad, M.D.*, DAB No. 2266, at 14 (2009) (regulations authorizing revocations under section 424.535(a)(3) based on felony convictions "afford affected suppliers only a post-revocation hearing"), *aff'd, Fayad v. Sebelius*, 803 F. Supp. 2d 699, 707 (E.D. Mich. 2011) ("due process did not entitle Plaintiff to a prerevocation hearing"). In addition, "[n]othing in the regulations authorizes the ALJ to reverse a revocation to sanction CMS for alleged due process violations where CMS had a basis for the revocation under section 424.535(a)." *Louis J. Gaefke, D.P.M*, DAB No. 2554, at 11 n.10 (2013); *see also Mission Home Health, et al.*, DAB No. 2310, at 8-9 (2011) (facility's "argument that its constitutional rights were violated . . . provides no basis to reverse a denial of enrollment that is fully supported by the applicable laws and regulations."). Thus, any delay in acting on Petitioner's challenges to the revocation of his billing privileges would not provide the Board with a basis to reverse the ALJ Decision and the revocation.

8

Petitioner on appeal does not dispute the ALJ's finding that the "ten incorrect billings submitted over two days constitutes a pattern within the meaning of the preamble" to the final rule including 42 C.F.R. § 424.535(a)(8). ALJ Decision at 6-7, citing 73 Fed. Reg. 36,448, 36,455 (June 27, 2008) ("this basis for revocation is directed at providers and suppliers who are engaging in a pattern of improper billing . . . Accordingly, we will not revoke billing privileges under § 424.535(a)(8) unless there are multiple instances, at least three, where abusive billing practices have taken place"). We accordingly do not address the ALJ's finding of a pattern of improper billing, or the ALJ's observation that a showing of a pattern of improper billing is not required by "the plain language of the regulation" authorizing revocation when the supplier "submits a claim or claims for services that could not have been furnished to a specific individual on the date of service." ALJ Decision at 6-7; 42 C.F.R. § 424.535(a)(8) (emphasis added).

Petitioner also seeks review of CMS's determination seeking recoupment of Medicare payments for claims that, he reports, CMS has determined were unsupported. *See* P. Ex. 4 (first page of CMS November 8, 2013 letter to Petitioner seeking repayment of "an overpayment in the amount of $684,068.98"). Petitioner "has asked for a hearing adjudication on his denied Medicare claims and overpayments demands [which] was not addressed" by the ALJ. RR at 1. Neither the ALJ nor the Board have authority to review CMS's overpayment determination. The initial determinations specified at 42 C.F.R. § 498.13(b) that the Board and its ALJs are authorized to review do not include CMS denials of individual Medicare payment claims. A supplier or provider may appeal claim denials to a CMS contractor in accordance with procedures set out in 42 C.F.R. Part 405, subpart I, and claim denials may be further appealed, in appropriate circumstances, to the ALJs in the Office of Medicare Hearings and Appeals and then to the Medicare Appeals Council. *See* 42 C.F.R. Part 405, Subparts G, H, I; 74 Fed. Reg. 65,295 (Dec. 9, 2009).

Accordingly, we conclude that the ALJ's determination that Petitioner could not have furnished Medicare services as claimed to five Medicare beneficiaries on December 23, 2011 and February 14, 2012 was supported by substantial evidence and free of legal error.

9

## Conclusion

For the reasons explained above, we affirm the ALJ Decision sustaining the revocation of Petitioner's Medicare billing privileges under 42 C.F.R. § 424.535(a)(8).


_____ /s/ _____
Constance B. Tobias



_____ /s/ _____
Leslie A. Sussan



_____ /s/ _____
Stephen M. Godek
Presiding Board Member

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

RONALD GRASON,
          PLAINTIFF
        v.
SECRETARY, CENTER FOR
    MEDICARE/MEDICAID SERVICES
NATIONAL GOVERNMENT SERVICES, INC
ILLINOIS DEPARTMENT OF FINANCIAL
AND PROFESSIONAL REGULATION (IDFPR)

CASE NO.

14-2267

AFFIDAVIT

PLAINTIFF GRASON STATES UNDER OATH THAT
ALL THE pleadings IN THE COMPLAINT
AND ACCOMPANYING MOTION are TRUE AND
CORRECT TO THE BEST OF HIS KNOWLEDGE.

_____
          RONALD GRASON

SIGNED AND SWORN
BEFORE ME, A NOTARY
public ON October 25, 2014

```
++++++++++++++++++++++++++++
+        "OFFICIAL SEAL"        +
+       ANTHONY GRASON          +
+  NOTARY PUBLIC, STATE OF ILLINOIS  +
+  MY COMMISSION EXPIRES 03-07-2015  +
++++++++++++++++++++++++++++
```